FILED

AUG 14 2017

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case No.: 1:17-cv- 3176 |
| *Plaintiff,* | ) | Hon. |
| | ) | Judge Presiding |
| v. | ) | |
| | ) | Hon. |
| STATE OF ILLINOIS, | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | Jury Trial Demanded |

### COMPLAINT AGAINST MISUSE OF DEFAMATION LAW DOCTRINES TO ALLOW RETALIATION AGAINST DISABILITY ACCESS ADVOCATE ANDREW U. D. STRAW

Now comes *plaintiff* Andrew U. D. Straw, *pro se*, an adjudicated "qualified person with a disability" under the ADA, and seek ADA Title II relief against State of Illinois for failing to protect me with its law of defamation when a newspaper and others published defamatory representations of me, backed with reporting me to the Streamwood police, proving that the allegations against me were of crime when I demanded simply that businesses, schools, and others provide handicap parking when they had none, resulting in ADA retaliation under Title V of the Act:

### BACKGROUND FACTS

1. I am disabled and the Northern District of Illinois U.S. District Court has adjudicated this fact.[1]

2. I incorporate by reference all of my exhibits (0.1, 0.2, 1-4, 4.1, 5-7), including the affidavit at Exhibit 4.1.

---

[1] *Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir.)

1

3. My disabilities come from public service. I broke both of my legs and my pelvis on the way to work at the Indiana Supreme Court on February 22, 2001. I was born aboard Camp LeJeune, NC, when my father was serving in the U.S. Marine Corps in 1969 and so poisoned and disabled. My mother was killed by one of the Camp LeJeune poisons. I am the administrator of her estate and seeking compensation for us both.[2]

4. I moved to Streamwood, Illinois, in 2013, and immediately noticed the severe lack of handicap parking spaces across the village. I sent a letter to the Village President asking for help with making the village entities more accessible under the ADA. (Exhibit 0.1).

5. In August 2013, I demanded handicap parking and sent a few letters to local Streamwood businesses and the Chamber of Commerce asking compliance with the ADA and the Illinois Human Rights Act. (Exhibit 0.2). I demanded damages since the IHRA provides for damages.

---

[2] *Straw v. United States*, 17-2114 (Fed. Cir.); *Straw v. United States*, 16-17573-GG (11th Cir.)

6. The Chamber of Commerce had no handicap parking spaces whatsoever even though it was in a shopping center near my home with several other businesses.

7. Because my letter to the local government and the demand letters mentioned the ADA, the ADA Title V protections against retaliation should have applied. 42 U.S.C. § 12203; 28 C.F.R. § 35.134. The U.S. DOJ Technical Assistance manual explains that the protections against retaliation are very broad: http://www.ada.gov/reg2.htm

8. The ADA's anti-retaliation provision provides for compensatory damages under Title II if Title II entities are involved. 42 U.S.C. § 12203(c).

9. The Village did an audit because I was featured on the front page of the Daily Herald newspaper on in August and October 2013. The Cook County State's Attorney informed me that this audit had happened and I requested the audit papers from the Village of Streamwood and received them.

10. The Village found about 150 handicap spaces were missing or done wrong in Streamwood parking lots and I have copies of the audit reports.

11. These violations happened in both Title II entities such as schools and a fire station and also in many Title III entity parking lots such as businesses.

12. About 11 Chamber members were cited in the audit.

13. In short, the Title II violations that I exposed provide me with ADA Titles II & V anti-retaliation protection, including compensatory damages. When I complained to the village, that was also an ADA Title II complaint and retaliation for making that complaint enables compensatory damages.

14. The Chamber of Commerce Executive Director retaliated against my letter by immediately making a report to the Streamwood Police claiming my letter was "a scam." (Exhibit 6)

15. This was a report of crime to the Streamwood police.

16. The Police came to my house in Streamwood because I had been labeled a criminal by the Chamber executive director, and I lived about ½ mile from the Chamber office at that time. The Police looked at the scars on my legs and appeared to understand that I am indeed disabled.

17. The Police asked if I was an attorney anywhere, and of course I am. The Police were trying to determine if I stated false things in my letter, as the Chamber suggested, to get money.

18. I showed the Police my handicap parking placard issued by the Secretary of State of Illinois.

19. On or about September 6, 2013, the Daily Herald newspaper (Paddock Publications) printed a letter to the editor in the paper version of the newspaper, editorial page, from a Mr. Louis Bowers, who accused me of "extortion" and "greed" and attacked my motives, stating that obtaining handicap parking was not my motive, but only obtaining money. (Exhibit 1)

20. Black's Law Dictionary defines the word extortion and every definition refers to a crime. (Exhibit 2)

21. Of course, the Chamber also said that I committed a crime just days earlier with the police report.

22. In fact, I never obtained even one cent from this initial set of demand letters alone, only when I later filed complaints or lawsuits.

23. The Chamber of Commerce installed three handicap parking spaces, as I asked. They had to do this because that is the law under the ADA as well as the Illinois Human Rights Act.

24. The Chamber of Commerce also stated that my efforts were extortion, as Mr. Bowers did.

25. Later, the Chamber executive director stated her regret at opposing me and said she "always" thought I was correct. She did not seem to believe this when she reported me to the police, or when she confronted me in her Chamber's own parking lot, which I was visiting with Daily Herald journalists.[3]

26. I was in fact always correct and the audit just showed the widespread violations I was opposing.

## LAWSUIT: COOK COUNTY CIRCUIT COURT

27. I filed a defamation lawsuit when the Daily Herald newspaper and Bowers and the Chamber of Commerce refused to apologize or pay me for their defamatory and public statements.

---

[3] http://www.dailyherald.com/article/20131004/news/710049933/

28. In 2014, Mr. Bowers apologized to me when he found out about the roughly 150 handicap spaces the audit revealed due to my advocacy. He paid me and wrote his apology, notarized. (Exhibit 3)

29. The Chamber did not apologize and the newspaper did not apologize for the Bowers letter, even when *Bowers did*.

30. I lost my lawsuit, but the Cook County Circuit Court did find that the Chamber Executive Director could not claim her comments were "innocent." (Exhibit 4, page 4, ¶ 4)

31. That same court stated that the Chamber's accusations of "scam" and "extortion" toward a disabled civil rights lawyer who was seeking handicap parking was *not malicious*.

32. With regard to the newspaper and Mr. Bowers, the judge stated that accusing me of extortion and greed in the newspaper in the context of my civil rights advocacy for the required handicap spaces were *capable of innocent construction*.

33. With regard to the newspaper and Bowers, the judge stated there was *no malice*.

34. The trial judge attempted to dispose of the Bowers letter by claiming it was covered by CDA § 230(c), but this was as a result of

improperly believing that the letter was only printed online, when it was printed in the **paper version** also on or about September 6, 2013.

## ON APPEAL: ILLINOIS COURT OF APPEALS, DISTRICT ONE

35. The Illinois Court of Appeals treated the defamatory matter the same way, as not being malicious or being capable of an innocent construction. (Exhibit 5)

36. The Illinois Supreme Court refused transfer on September 28, 2016. (Exhibit 7)

## ADA COMPLAINT BECAUSE COMMON LAW OF DEFAMATION IS A SERVICE AND RIGHT OF EVERY CITIZEN, INCLUDING DISABILITY CIVIL RIGHTS LEADERS

37. My ADA complaint is that the State of Illinois has allowed defamation against me in violation of the anti-retaliation provisions of the ADA. 42 U.S.C. § 12203; 28 C.F.R. § 35.134; http://www.ada.gov/reg2.htm

38. I was clearly and directly asking for handicap parking in my neighborhood and village so I could use it with my placard. I mentioned the ADA. This included public and private entities, and I asked both the local government and the state courts to protect my rights not to be retaliated against.

39. The State of Illinois, like all states, has protections against defamation and I sought that protection. The state courts at the Court of Appeals and trial court level have refused that service of protection that should have been provided to me as a state service under 42 U.S.C. § 12132. Defamation law is very similar to the anti-retaliation provisions of the ADA and the defamation law of the State of Illinois must cover and include as NOT innocent and PER SE malicious when an ADA violator like the Chamber retaliates by reporting to the POLICE that a civil rights leader like myself is "a scammer" or "extortionist" or that my goal is money and not handicap spaces. Reporting someone to the police who had just revealed an ADA violation is retaliation and the State of Illinois must not protect civil rights violators who misuse the police to retaliate and intimidate. I did nothing to merit police coming to my house.

40. Stating that "scam" or "extortion" are *capable of innocent construction* or *lacking malice* in such a context is a bad faith statement of law and in fact it represents discrimination and retaliation to not provide the protections of the defamation law to a civil rights lawyer with disabilities from his work for an *entire state judicial branch*.

9

41. The ADA **mandates** that states provide their services equally to people with disabilities and I have not been treated equally. Every effort has been made to prevent me from getting justice, including bending over backwards to protect people who abused me verbally and publicly, called me a criminal and questioned whether I even had the motivation to obtain handicap parking, when all I wanted was handicap parking in a village lacking 150 of them.

42. If the State of Illinois will not help me when an abusive Chamber of Commerce or newspaper or member of the public attacks me publicly and uses the police against me, then the State of Illinois must pay the compensatory damages here.

43. I demand $5 million for the failure of the State of Illinois to provide me protections under the law of defamation.

44. Any disabled person fighting for handicap parking should have the peace of mind from being able to expect the Illinois Courts to punish defamation. Otherwise, the situation is much more dangerous for people with disabilities and their allies.

**ILLINOIS SUPREME COURT NON-REVIEW**

45. The Illinois Supreme Court did not even deign to provide an opinion rejecting my defamation counts. It just refused transfer.

46. My facts demanded relief, but none was given.

## STANDING AND OTHER LEGAL ARGUMENTS

47. Standing is easy in a situation like this. I am disabled and have been fighting directly for handicap parking and sidewalk access for a long time. *Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir.) shows that I continue to fight for access. This is the case that held at the district court level that I am a qualified person with disabilities under the ADA.

48. The state courts are covered entities under ADA Title II, and I am not suing over the result in the cases against the newspaper or the Chamber or Bowers. I am suing over the way the law of defamation was twisted and the facts such as the police investigation of me ignored so as to deny me my right to defamation protection. I seek ADA Title V anti-retaliation damages to compensate me for the denial to me of the law of defamation. The law of defamation is a service.

49. The U.S. Supreme Court has laid out the requirements for standing in a civil rights act case. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972). This Civil Rights Act of 1968 case shows

that Article III standing can be created through Congress passing a civil rights act that gives a particular group the right to sue, and violation of the terms of the Act is all the injury an "aggrieved party" needs to show.

50. The *Fiedler* case from Maine showed that *Trafficante*'s 9-0 reasoning applies in the case of the ADA. *Fiedler v. Ocean Properties Ltd.*, 683 F. Supp. 57 (D. Maine 2010).

51. The Trafficante rule was mentioned positively 20 years later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

52. It cannot be disputed that I have standing when I was opposing over 150 ADA violations and was attacked openly in the newspaper for it, among other places.

53. I have the right to compensatory damages under the ADA, Title II, per *Barnes v. Gorman*, 536 U.S. 181 (2002) and the retaliation must also be compensated under Title II, as per Title V.

54. Retaliation against an ADA complaint is illegal. 42 U.S.C. § 12203 and 28 C.F.R. § 35.134. http://www.ada.gov/reg2.htm explains how broad prohibitions against retaliation, interference, coercion, and intimidations are.

55. 42 U.S.C. § 12203(c) explains that the remedies available for retaliation, interference, coercion, and intimidation are those found in Title II in a case such as this.

56. Filing an ADA lawsuit or making a complaint is a right under the Act, no matter how the complaint or lawsuit is resolved ultimately. Simply filing or complaining is a right.

57. I made my complaint with the Village in August 2013.

58. I filed my lawsuit to protect my ADA advocacy and the state courts would not provide this common law service.

59. Instead, they act as though it is just fine to abuse disability rights lawyers like me and report them to the police for making a complaint.

60. The State of Illinois has no immunity under the ADA, Title II: 42 U.S.C. § 12202. The lack of immunity for state courts was discussed in *Tennessee v. Lane*, 541 U.S. 509 (2004), because Congress has validly abrogated 11th Amendment immunity of states, including state courts. *Tennessee v. Lane* is apropos to this situation because it imposed the ADA on the actions of a state court.

## COUNT I: DISCRIMINATION/RETALIATION FROM DENYING COMMON LAW DEFAMATION AS STATE SERVICE

61. I had a right to make complaints in Streamwood for more handicap parking and there was no excuse for retaliating against me with words of hate and reporting me to the police.

62. Making a false police report is a criminal act and I believe the state courts of Illinois have protected both the defamation and the criminal act of that unjustified police report against me, which was obviously to deter me from making more complaints.

63. The State of Illinois must be liable when the state courts withhold the service of justice and the law of defamation properly applied. The facts and law must not be twisted to protect known civil rights violators over the disabled civil rights activist who complains. There is a right answer here: I had a right to the law of defamation under my factual circumstances, but that protection was denied. When a person accuses a civil rights leader of a crime in the newspaper and in front of journalists and then calls the police to harass them, defamation should be automatic. Malice should be automatic. There is no innocent construction of accusing someone of a crime *to the police* and repeating it publicly.

## PRAYER FOR RELIEF

64. Because I believe the State of Illinois by its Cook County Circuit Court, its Court of Appeals, and its Supreme Court have denied me the right to the law of defamation when I have been singled out for attacks solely because I demanded handicap parking. My efforts yielded 150 handicap spaces in Streamwood, and this is a large number for such a small village.

65. Other people with disabilities and I need to be able to rely on the law of defamation, not just the ADA. Because the State does not properly protect disability access advocates, but instead assists the ADA violators in retaliating by denying the common law, I demand $500,000 under *Barnes v. Gorman*, 536 U.S. 181 (2002)

## JURISDICTION AND VENUE

66. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Americans with Disabilities Act, Titles II & V.

67. Venue properly lies in the Northern District of Illinois under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to this action occurred within this district, in the State of Illinois.

I, *plaintiff* Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury. Dated: August 9, 2017

Respectfully submitted,

s/ ANDREW U. D. STRAW

1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333  Fax: (877) 310-9097
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, *plaintiff* Andrew U. D. Straw, certify that I filed the above COMPLAINT and supporting EXHIBITS and CIVIL COVERSHEET with the Clerk of this Court via U.S. Mail, postage prepaid and certified with tracking on August 9, 2017. I will file an IFP motion and PROPOSED SUMMONS separately, with U.S. Marshal Form and MOTION to ask the U.S. Marshal to serve my complaint and summons.

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff,* Proceeding *Pro Se*

August 9, 2017